**Marcia JONES, Plaintiff–Appellant,**

v.

**Harry PSIMOS, Defendant–Appellee.**

**No. 88–2913.**

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1989.

Decided Aug. 21, 1989.

As Amended Aug. 28, 1989.

Rehearing Denied Sept. 26, 1989.

Robert G. Berger, Highland, Ind., for plaintiff-appellant.

Gregory J. Tonner, Robert P. Kennedy, Spangler, Jennings & Dougherty, Merrillville, Ind., for defendant-appellee.

Before WOOD, Jr., and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant-appellee Harry Psimos represented Plaintiff-appellant Marcia Jones in divorce proceedings in the Indiana state courts. Dissatisfied with Mr. Psimos' professional performance, Ms. Jones invoked the district court's diversity jurisdiction and sued Mr. Psimos for legal malpractice.[1] Upon Mr. Psimos' motion the court below granted summary judgment against Ms. Jones. She now appeals.

## I. FACTUAL BACKGROUND

### A. Indiana Divorce Proceedings

Edward and Marcia Jones married on March 17, 1973. When Mr. Jones filed for divorce in February 1982, Ms. Jones retained Mr. Psimos to represent her. The Joneses' marriage was dissolved on November 23, 1982, but by agreement of both parties division of the couple's property was reserved for a later date. The parties thereafter engaged in discovery concerning the couple's marital assets and liabilities. The judge presiding over the Joneses' property distribution heard four days of testimony on the issue in the summer of 1983.

It appears that during the marriage Mr. Jones was self-employed, owning a service station, while Ms. Jones worked as a teacher in the Indiana public school system. The couple purchased a home in 1974 that Ms. Jones continued to occupy after the divorce. Mr. Jones gave Ms. Jones $600 a week for household and personal expenses. Ms. Jones also contributed her salary to the family income, but it was always substantially less than the approximately $31,-000 Mr. Jones provided from the service station's gross receipts each year. The Joneses lived well. Ms. Jones acquired large quantities of clothing, expensive diamond jewelry and furs; Mr. Jones wore Cartier watches and Gucci loafers. One Christmas, they purchased $500 worth of clothing for Mr. Jones' children from a previous marriage. The couple's federal income tax returns for the years of their marriage do not indicate a level of income that would permit them to net over $30,000 from the service station business each year for personal and household expenses. The business did not in fact generate sufficient money to support such withdrawals. At the time of the property distribution hearing Mr. Jones owed $40,000 to the state of Indiana in unpaid sales tax and $12,000 to the federal government in overdue income tax. Mr. Jones also apparently gambled away much of the earnings of the service station in the commodities market. Ac-

---

1. Ms. Jones is a resident of Indiana, Mr. Psimos of Illinois.

cording to Ms. Jones, Mr. Jones siphoned off money from both the service station business and numerous commodities and stock accounts in which he had an interest. It was her contention during the property distribution hearings that Mr. Jones had secreted substantial assets in this way, and that she was entitled to share in the booty. In the alternative, Ms. Jones argued that if there was no such money, then Mr. Jones had wasted marital assets since the time of the divorce, and therefore she was entitled to a greater share of what remained. Mr. Jones, on the other hand, asserted that he had no such secret funds, and furthermore, that Ms. Jones was guilty of selling off or concealing certain marital assets herself, thus depriving him of his fair share.

The Indiana state court judge, after considering the parties' testimony and the evidence offered to bolster their contentions of concealment, concluded that the "allegations of secreting assets are probably true as to both parties" and that "the assets secreted by each party were of equal value and is not a matter that the court will consider in its final decision." *In re Marriage of Jones*, No. C–269–82 (Jasper Circuit Court, Indiana, Jan. 25, 1984) (order distributing property). The judge went on to award Ms. Jones the family residence, a 1981 Mazda automobile, her personal jewelry, and one half of the household furniture and furnishings. She was also ordered to assume debts owed to her credit union and to several retail clothing and jewelry stores, as well as any other debts incurred by her but not specifically ordered paid by Mr. Jones.

Mr. Jones was awarded the service station business and all its accounts, all personal property related to the business including tools, equipment and inventory, a 1973 Lincoln automobile, one half of the household furniture and furnishings, and certain financial assets in the form of stocks and investment accounts. He was ordered to assume debts owed by the service station and by the couple to various creditors, in addition to other debts incurred by him that Ms. Jones was not specifically ordered to pay. In the end, the Joneses each received roughly half of the net marital assets.

The judge's finding that the couple had secreted assets from one another in an equal amount forms the eye around which the current storm of litigation swirls. Ms. Jones was completely dissatisfied with the property division made by the judge, contending that there was no evidence from which the judge could have concluded that she had secreted marital assets, while on the other hand there was substantial evidence that Mr. Jones had concealed the existence of significant marital assets. Mr. Jones has never conceded this point however.

Mr. Psimos pursued post-judgment remedies for Ms. Jones in the form of a Motion to Amend Findings of Fact and Conclusions of Law and a Motion to Correct Errors. After these motions were denied by the trial judge, Mr. Psimos wrote to Ms. Jones and discussed the possibility of appealing the property distribution decision. In that letter Mr. Psimos rendered this professional assessment:

> ... I feel that I have done substantial work and feel that there is error in the record and the possibility of reversal is good. As you know, I cannot promise you what the Appelate (sic) Court would do if we filed the Appeal.

Mr. Psimos' letter described in some detail the steps necessary to initiate and perfect an appeal. He stated that under Indiana law a praecipe would have to be filed within 30 days of April 16, 1984 (the date the trial judge denied Ms. Jones' post-judgment motions), and that the transcript of the property distribution hearing would have to be filed within 90 days of the April 16 date. Mr. Psimos also informed Ms. Jones that the cost for obtaining a transcript would probably run between $750 and $1500, but was a necessary expense if she wished to appeal.[2]

---

2. He also informed her of other costs of appeal, as well as setting the value of his services to her through the appeal at $7500, although the letter does not appear to actually be a request for payment.

Ms. Jones indicated that she wished to appeal the property distribution order and therefore provided Mr. Psimos with an advance toward the cost of copying the transcript.[3] Although Mr. Psimos filed a praecipe in the Indiana Court of Appeals within the 30–day limit, he thereafter failed to file certain required documents and Ms. Jones' appeal was summarily dismissed by the appellate court. Mr. Psimos tried unsuccessfully to have the appeal reinstated. He eventually returned some of the money advanced to him by Ms. Jones, and paid the balance due on the transcript out of his own funds.

### B. *District Court Legal Malpractice Proceedings*

Ms. Jones filed suit against Mr. Psimos for attorney malpractice in federal district court on November 9, 1984. Ms. Jones' complaint alleged that Mr. Psimos' failure to properly perfect the state court appeal was a breach of the duty of care he owed her, as well as a breach of contract. Mr. Psimos filed a counterclaim for unpaid attorney's fees, costs and expenses arising out of his representation of Ms. Jones in the divorce litigation. On March 20, 1986 Mr. Psimos moved for summary judgment against Ms. Jones on the malpractice claim. The district court judge heard argument on all pending motions on October 14, 1987 and again on February 12, 1988. The court ordered the parties to submit proposed findings of fact and conclusions of law on February 17, 1988. Ms. Jones was also given until that date to file a motion for leave to file a first amended complaint, a motion for which she had requested additional time at the February 12 hearing. On February 17, Ms. Jones filed her Motion for Leave to File a First Amended Complaint, but failed to file any proposed findings of fact and conclusions of law. Mr. Psimos objected to the motion on February 26 and

filed his proposed findings of fact and conclusions of law. The district court judge denied Ms. Jones' motion to file an amended complaint on August 18 and granted Mr. Psimos' motion for summary judgment on the same day. Judgment was entered against Ms. Jones on her malpractice claim, but Mr. Psimos' counterclaim for attorney's fees, costs and expenses remained pending.

Ms. Jones filed a notice of appeal to this court on September 16, 1988. At the time, the August 18 orders were not final and appealable due to the pending counterclaim. Furthermore, the district judge had not certified the decisions as immediately appealable under Fed.R.Civ.P. 54(b). On October 6, the district court entered an order, making the requisite findings and certifying the decisions as final and appealable orders. Ms. Jones did not file a new notice of appeal. Mr. Psimos later filed a Motion to Dismiss the appeal in this court, with supporting memorandum, contending that we did not have jurisdiction of the matter. That motion was denied.

## II. ANALYSIS

The parties raise three issues. Initially, Mr. Psimos continues to assert that this court does not have jurisdiction over this appeal. We do not address this issue again for we decided it against Mr. Psimos in our order dated January 30, 1989.[4] Ms. Jones raises two additional issues. First, Ms. Jones contends that the district court erred when it granted Mr. Psimos' Motion for Summary Judgment on her attorney malpractice claim. Second, she argues that the district court should have granted her motion to amend the complaint to include a constructive fraud claim.

### A. *Attorney Malpractice*

A grant of summary judgment is reviewed *de novo* and we apply the same

---

**3.** It is unclear exactly how much Ms. Jones advanced to Mr. Psimos—she stated in her brief that the amount was $1000, while Mr. Psimos' brief indicates that the amount was $1800.

**4.** *See Jones v. Psimos,* No. 88–2913 (7th Cir. Jan. 30, 1989) (order denying Defendant-appellee's

Motion to Dismiss). We denied Mr. Psimos' motion based on *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin,* 760 F.2d 177 (7th Cir.1985) ("LCO"). We recently confirmed the continuing viability of *LCO* in *Yockey v. Horn,* 880 F.2d 945, 948, n. 4 (7th Cir., 1989).

standard of decisionmaking on review as that employed by the district court. *McMillian v. Svetanoff,* 878 F.2d 186, 188 (7th Cir., 1989); *Greer Properties, Inc. v. LaSalle Nat'l Bank,* 874 F.2d 457, 459 (7th Cir.1989). Summary judgment will be affirmed where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "A party faced with a motion for summary judgment who bears the burden of proof on a particular issue may not rest on its pleadings but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact for trial." *McMillian,* 878 F.2d at 188 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

Both parties agree that in order to establish a prima facie case of attorney malpractice under Indiana law, a plaintiff must demonstrate that she (1) employed the attorney, (2) who failed to exercise ordinary skill and knowledge, (3) proximately causing, (4) damage to the plaintiff. *See Bailey v. Martz,* 488 N.E.2d 716, 719 (Ind.App. 1986); *Fiddler v. Hobbs,* 475 N.E.2d 1172, 1173 (Ind.App.1985). Ms. Jones and Mr. Psimos also agree that the determinative issue is the question of causation. Mr. Psimos was clearly hired by Ms. Jones to represent her, and Mr. Psimos, for purposes of argument, accepts that he failed to exercise ordinary skill and knowledge by an attorney when he neglected to file the papers necessary to perfect Ms. Jones' appeal. The question is whether this negligence caused any damage to Ms. Jones. She quite obviously has lost any rights to further appeal the property distribution entered in the Joneses' divorce case, but that alone is insufficient to impose liability upon Mr. Psimos. "[A] party must establish that there was a valid claim in the underlying action which was allegedly mishandled by the defendant attorney. In other words, the client must show that the attorney's negligence proximately caused the injury." *National Wrecking Co. v. Spangler, Jennings, Spangler & Dougherty,* 782 F.2d 101, 104 (7th Cir.1986) (applying Indiana law) (citation omitted). The defendant law firm in *National Wrecking,* like Mr. Psimos, failed to perfect an appeal for its client National Wrecking Company. National Wrecking sued for attorney malpractice. On appeal, this court affirmed the district court's grant of summary judgment in favor of the law firm when the plaintiff corporation failed to prove that it had a valid underlying claim that had been lost as a result of the defendant's neglect.

Similarly, Mr. Psimos claims that summary judgment was properly granted in his favor because Ms. Jones did not have a valid underlying claim. Ms. Jones, on the other hand, disagrees, asserting that if Mr. Psimos had perfected the appeal the Indiana Court of Appeals would have reversed the property distribution order of the trial court. This is in fact what Ms. Jones would have to prove in the district court if she were to succeed in her attorney malpractice claim. When analyzing the merits of an attorney malpractice claim, the court must put itself into the role of the court that ought to have reviewed the underlying claim but missed its chance because of the attorney's negligence in perfecting the appeal. *See* R.E. Mallen & V.B. Levit, *Legal Malpractice* § 583, at 738–40 (2d ed. 1981).[5] We are, as was the district court before us, left with the difficult task of determining what the Indiana appellate court might have done had it had the chance. If it would have reversed in favor of Ms. Jones, then we must reverse the grant of summary judgment by the district court in Mr. Psimos' favor and let Ms.

---

5. Section 583 provides:

   *CAUSATION.* The most common issue concerning an error in handling an appeal is whether the attorney's negligence caused damage. Initially, the client must prove that but for the attorney's negligence, the plaintiff would have prevailed. The resolution of this issue has on occasion puzzled trial judges, who wonder how they can possibly determine what an appellate court would have done upon review of the underlying action. This decision must be made by the trial judge as an issue of law, based upon review of the transcript and record of the underlying action, the argument of counsel, and subject to the same rules of review as should have been applied by the appellate courts.

Jones' malpractice claim go forward. If, on the other hand, the Indiana appellate court would not have reversed the property distribution order, then Ms. Jones has suffered no injury by Mr. Psimos' failure to perfect the appeal and the district court's award of summary judgment in his favor was proper. Our task, therefore, is to place ourselves in the shoes of an Indiana appellate court.

The Indiana Dissolution of Marriage Act, Ind.Code Ann. §§ 31–1–11.5–1 to –26 (West Supp.1988), provides the statutory scheme under which the Indiana trial judge divided the Joneses' marital property. According to the Act, "the court shall divide the property of the parties ... in a just and reasonable manner." Ind.Code Ann. § 31–1–11.5–11(b) (West Supp.1988). Furthermore,

> [t]he court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;
>
> (2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;
>
> (3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property; and
>
> (5) The earnings or earning ability of the parties as related to a final division of property and final determi-

nation of the property rights of the parties.

Ind.Code Ann. § 31–1–11.5–11(c)(1)–(5) (West Supp.1988). The court is to divide both assets and liabilities under this scheme. *Hunter v. Hunter*, 498 N.E.2d 1278, 1293 (Ind.App.1986).

The appellate courts of Indiana review property distribution decisions under an abuse of discretion standard. *Id.* at 1293; *In re Marriage of Rupp*, 449 N.E.2d 1164, 1166 (Ind.App.1983). On review, the appellate court does not reweigh the evidence and considers only that evidence, and reasonable inferences therefrom, that is most favorable to the appellee. *In re Marriage of Rupp*, 449 N.E.2d at 1166. There is a presumption under Indiana law that the court properly applied these factors when dividing marital property, *Id.*; *Baker v. Baker*, 488 N.E.2d 361, 365 (Ind.App.1986); *In re Marriage of Mulvihill*, 471 N.E.2d 10, 13 (Ind.App.1984). The party challenging the trial court's division of property bears the burden of proof in overcoming this presumption. *Hunter*, 498 N.E.2d at 1293; *Temple v. Temple*, 435 N.E.2d 259, 260 (Ind.App.1982). The trial court's decision will be reversed "only where the result reached is clearly against the logic and effect of the facts and circumstances before the court. The fact that the evidence might support a different conclusion by the trial court does not permit us to substitute our judgment." *Hunter*, 498 N.E.2d at 1293 (citing *Taylor v. Taylor*, 436 N.E.2d 56 (Ind.1982), and others). We thus review the Indiana trial court's property distribution decisions under an abuse of discretion standard.

■ In the present case, Ms. Jones claims that the trial court abused its discretion when dividing the couple's marital assets and liabilities and in making the following specific findings: that both parties had secreted assets; that the secreted assets were of equal value; that Mr. Jones failed to remit taxes to the State of Indiana; that Mr. Jones convinced his wife that the filling station was thriving; that the personal property at the service station was worth only $12,000; that certain stock

was worth only $937; and that the value of the service station business was $110,000. A number of these issues can be dealt with quickly.

Although Ms. Jones challenges the Indiana trial court's finding that her former husband owed substantial taxes to the State of Indiana, she never offered any evidence to refute Mr. Jones' testimony. Mr. Jones testified that at the time of the marriage's dissolution he owed nearly $41,000 to the state of Indiana in unpaid sales tax. At a November 1982 provisional hearing, Mr. Jones indicated that he had a federal tax debt of $12,000 and a state tax debt of over $40,000. The trial judge concluded that Mr. Jones had been avoiding the payment of taxes for quite some time in order to maintain the couple's lifestyle. The record supports such a conclusion. The record of the property distribution hearings indicates that Mr. Jones was giving Ms. Jones $600 a week out of the gas station's gross receipts for personal and household expenses. He also, in the later years of the couple's marriage, moved large amounts of money around between the station's expense account and several commodities accounts. He eventually liquidated a ready asset account he had at Merrill Lynch (worth approximately $8,000) in order to pay off some of the taxes he owed. We find no error in the trial judge's determination that Mr. Jones had a significant tax debt.

We find Ms. Jones' challenge of the trial court's finding that Mr. Jones had convinced her that the service station was a thriving business irrelevant. Whether Mr. Jones convinced her of that, or whether she convinced herself of that, is beside the point. We do not doubt that Ms. Jones believed that the service station was more profitable than it actually was, but an ill-founded belief concerning the profitability of the service station, whatever its source, is immaterial in a division of the couple's property. The business may have appeared to be thriving at one point, but the weekly withdrawals which gave the business an appearance of good health were actually a cancer that left the station over $80,000 in debt at the time of the Joneses' divorce.

Ms. Jones' objection to the trial court's finding that the service station business was worth $110,000 is also without merit. Mr. Jones suggested a worth far below the court's finding. Ms. Jones suggested a worth of between $100,000 and $150,000. The worth found falls within the range of Ms. Jones' estimate; she therefore has no grounds on which to complain. Furthermore, although Ms. Jones states in her brief that she challenges the trial court's $12,000 estimate on the worth of personal property associated with the station, she never elaborates or points to any reference in the record to indicate that that amount is unreasonable. We can find no evidence in the record to suggest a valuation other than the $12,000 figure. We therefore see no error in the court's finding.

Additionally, there is no fault in the trial court's determination that certain stock owned by the couple was worth only $937. There was evidence that by the time the property disposition hearings were held the stock was worth over $12,000, but under Indiana law the value of a marital asset or liability is to be measured at the time of dissolution—in this case, February 9, 1982. Mr. Jones submitted evidence that established that the stock was worth only $937 on that date. The stock's value at some later date was irrelevant.

We are left finally with the only two issues that merit discussion: the trial court's conclusion that both parties in the Joneses' divorce had secreted marital assets and the judge's determination that the secreted assets were of equal value. This second conclusion permitted the judge to ignore the parties' allegations of concealment and dissipation of assets and get down to the business of dividing up what they were in fact able to prove existed. Ms. Jones makes extensive but rambling and not altogether accurate references to the hearing transcripts in her brief. For example, she claims that she testified at the distribution hearing that Mr. Jones brought money bags into the house three times a week in late 1981 and early 1982.

She cites a bottom line figure of $480,000. Apparently Ms. Jones believes that Mr. Jones was squirreling this money away and has it hidden somewhere. In reality the transcript of the hearings confirms neither the amount suggested nor the level of activity alleged by Ms. Jones. The record implies only that Mr. Jones kept the service station's bank deposit bag in a safe in the Joneses' home. From such information one cannot conclude that Mr. Jones was stashing large amounts of cash anywhere.

Moreover, Ms. Jones has not bothered to confine herself to a discussion of the value of marital assets at the time of the dissolution. For example, she brings up facts such as how much Mr. Jones deposited over time into a commodities account he shared with another man without tying this information to the value of marital assets on February 9, 1982. She also discusses a liquor license, valued at $10,000, once owned by a corporation (JWJT Corporation, of which Mr. Jones was a principal) which was defunct by the time the couple divorced. Ms. Jones also mentions a secret property trust she claims has a value of $100,000, but makes no citation to the record to support her claim that this is an asset secreted by Mr. Jones. A close reading of the transcript failed to reveal any mention whatsoever of any such property trust. The laundry list goes on, containing the same sort of vague allegations, unsupported claims and unidentified items.

In contrast, Ms. Jones plays down any actions she took that might be construed as concealment of assets. Yet there is no question that she sold an organ, purchased by her husband some years before, for $3000 not long after he moved out of the family home. She also admitted to taking three checks from the service station expense account checkbook, two of which she later cashed without her husband's knowledge for a total of $3000.

In such circumstances, where the record was cluttered with irrelevant valuation information, providing very little real evidence from which the trial court could make an accurate evaluation of the couple's assets, secreted or otherwise, we do not believe that the Indiana appellate court could possibly have found the judge's determination on this issue to be an abuse of discretion. The trial judge had the opportunity to observe both parties and found them to be bitter and acrimonious toward each other, interested more in punishing one another than in aiding him in the equitable division of their property. The Indiana Court of Appeals does not second guess a trial judge's weighing of the evidence, *see Temple*, 435 N.E.2d at 262, nor should we.

In the end, the Indiana trial judge made a virtually equal division of those net marital assets that he could clearly identify and value from four days of testimony. As noted earlier, there is a presumption under Indiana law that an equal division of marital property is just and reasonable. Ind. Code Ann. § 31–1–11.5–11(b). Ms. Jones has failed to rebut that presumption as well as the presumption that the trial court properly weighed the factors listed in Ind. Code Ann. § 31–1–11.5–11(b)(1)–(5). Because we do not believe that the Indiana appellate court would have reversed the trial judge's disposition of the Joneses' marital property as an abuse of discretion, we hold, as did the district court, that Ms. Jones failed to establish an element of the prima facie case for attorney malpractice in Indiana—causation—and that the district court therefore did not err in granting Mr. Psimos' Motion for Summary Judgment.

### B. *Constructive Fraud*

Ms. Jones filed her original complaint against Mr. Psimos on November 9, 1984. In that complaint she alleged only one theory of legal malpractice—attorney negligence. More than three years later, Ms. Jones sought to amend her complaint to include a theory of constructive fraud. Mr. Psimos adamantly opposed Ms. Jones' motion, arguing that (1) Ms. Jones had no valid cause of action for constructive fraud, (2) Ms. Jones' motion was untimely, and (3) Mr. Psimos would suffer substantial prejudice if the court granted the motion. The district court denied Ms. Jones' motion, agreeing with all three of Mr. Psimos' objections.

A district court's denial of a motion to amend pleadings under Fed.R.Civ.P. 15(a) will be overturned on appeal only upon a showing of abuse of discretion. *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir.1987). Rule 15(a) provides, in pertinent part, that

> [a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

As the proposed amended complaint was not offered until well after all responsive pleadings had been filed (and in fact not until after discovery was closed and a pretrial order issued), Ms. Jones could file her amended complaint only with leave of the district court or the written consent of Mr. Psimos.

The district court carefully considered Ms. Jones' motion in light of Mr. Psimos' objections. Initially, the court found that Ms. Jones' amended complaint failed to state a cause of action for constructive fraud. The court noted that while Indiana recognizes a cause of action for constructive fraud, Ms. Jones failed to state a prima facie case in her amended complaint. Under Indiana law, constructive fraud "arises by operation of law from conduct which, if sanctioned by law, would secure an unconscionable advantage." *Whiteco Properties, Inc. v. Thielbar*, 467 N.E.2d 433, 437 (Ind.App.1984) (citation omitted).

> [I]f one party is induced by another on the face of an oral promise, to place himself in a worse position than he would have been in had no promise been made, and if the party making the promise derives a benefit as a result of the promise, a constructive fraud exists which is subject to the trial court's equity jurisdiction.

*Id.* (quoting *Lawshe v. Glen Park Lumber Co.*, 176 Ind.App. 344, 347, 375 N.E.2d 275,

278 (1978) (citation omitted)). The district court found that Ms. Jones was unable to establish a prima facie case for constructive fraud because she was unable to prove that Mr. Psimos derived a benefit or gained an advantage as a result of his failure to properly perfect Ms. Jones' appeal. The district court therefore found this to be a sufficient basis upon which to deny Ms. Jones' motion.

Additionally, however, the district court also found that her motion was untimely, having been filed 39 months after her original complaint, well after the close of discovery and entry of a pretrial order. The district court cited *Kleinhans*, wherein we held that it was not an abuse of discretion for the district court to deny a motion to amend a complaint to add additional claims when the amendment was not based on any newly discovered information and was filed 18 months after the original complaint and 6 months after discovery had closed. *Kleinhans*, 810 F.2d at 625.

Furthermore, the district court reasoned that substantial prejudice to Mr. Psimos would result from permitting Ms. Jones to amend her complaint at such a late date. The court noted that Ms. Jones' attorney malpractice claim against Mr. Psimos had been pending since November 1984, that substantial time and effort had been spent preparing appropriate pleadings, motions and briefs defending the negligence claim, and that permitting Ms. Jones to raise an entirely new theory would serve only to unnecessarily prolong the litigation and severely prejudice Mr. Psimos because the new allegations could easily have been made and addressed from the initial filing of the suit.

Ultimately, the district court denied Ms. Jones' motion, stating that any one of Mr. Psimos' three objections was sufficient grounds upon which to deny the motion. We agree; there was no abuse of discretion and the ruling is affirmed.

AFFIRMED.