Raymond H. **DYKHOUSE,** Plaintiff,

v.

**G.R. MUGGE and Leland O. Storm,** Defendants.

No. 88–3152.

United States District Court, C.D. Illinois, Springfield Division.

March 28, 1990.

Supplemental Opinion April 24, 1990.

Mary Lee Leahy, Springfield, Ill., Kelly D. Long, Hillsboro, Ill., for plaintiff.

Randy E. Blue, Asst. Atty. Gen., Springfield, Ill., Barbara Fritsche, Jacksonville, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

A civil rights lawsuit against two state police officers.

We grant them summary judgment.

### I. Facts

The facts of this case are relatively simple and undisputed.

The Plaintiff, Raymond Dykhouse, was employed as a truck driver for Herrud & Co. and en route with a load of cargo to Jacksonville, Illinois, on May 27, 1986. At approximately 4:00 p.m. that afternoon a truck travelling northbound on U.S. Route 67 near Medora in Macoupin County illegally passed Gloria Barkley causing her to swerve sharply to the right to avoid a collision. Once Ms. Barkley stopped she observed the words "Thorn Apple Valley" and the number "511" on the rear of the trailer. Ms. Barkley wrote this description and the exact time (3:58) on a piece of paper and proceeded home—about 3 miles from the site of the incident.

Upon arriving home Ms. Barkley phoned the Litchfield office of the Illinois State Police (District 18) and reported the incident. The State Police immediately broadcast an "ISPERN" message which stated:

WANTED FOR RECKLESS DRIVING NB 67 APPROX 1555 A TRACTOR

TRAILER SEMI UNIT NO DESCRIPTION ON TRACTOR ON THE BACK OF TRAILER IN LARGE LETTERS "THORN APPLE VALLEY" AND THE TRAILER NUMBER 115.

UNIT LAST SEEN NB 67 FROM MEDORA TOWARD JACKSONVILLE COMP WILL BE SIGNED.

This message was broadcast at 4:14, approximately 15 minutes after the incident occurred. The State Police also dispatched Trooper G.R. Mugge to Ms. Barkley's home to take a report of the incident. Upon arriving at her home, Trooper Mugge confirmed the facts of the complaint with Ms. Barkley and had her sign a traffic citation for improper passing at an intersection, in violation of Ill.Rev.Stat. ch. 95½, ¶ 11–706. Trooper Mugge also checked Ms. Barkley's vehicle to ensure that the brake lights and turn signals were operational. They were.

While Trooper Mugge was at the Barkley residence, Morgan County deputy sheriffs stopped Dykhouse's truck on Rt. 36 approximately one mile east of Jacksonville pursuant to the ISPERN message. A description of the stopped truck was relayed to Trooper Mugge and Ms. Barkley confirmed that it was the truck that had run her off of the road.

Trooper Mugge then proceeded to the Morgan County Sheriff's office where he met Dykhouse, the driver of the truck. Trooper Mugge searched the truck, gave Dykhouse sobriety tests (which he passed), and issued the citation to Dykhouse. Dykhouse admitted that he had driven through the area where Ms. Barkley was run off the road but said that he could not recall any incident as described by Ms. Barkley. The Morgan County Sheriff's office refused to allow Dykhouse to post bond while they waited for Trooper Mugge to arrive. Dykhouse was detained for about one hour before he was allowed to proceed on his way.

Dykhouse requested a jury trial which was held before Associate Judge Dennis Schwartz in Macoupin County on April 16, 1987. The court ordered the State to proceed by a verified information, and, after the testimony of Trooper Mugge and Ms. Barkley, Judge Schwartz granted the defense's motion to dismiss the charges because neither Trooper Mugge nor Ms. Barkley could recall being placed under oath prior to signing the verified information.

Dykhouse then brought suit under 42 U.S.C. §§ 1983, 1985, and 1988 against Trooper Mugge, Captain Storm (Trooper Mugge's supervisor and commander of district 18), Morgan County, Morgan County Sheriff's deputies, Macoupin County, and Diane Smith, the notary who notarized the allegedly verified information. Dykhouse is seeking $100,000 in compensatory and $500,000 in punitive damages. We allowed Macoupin County's and Ms. Smith's prior motions to dismiss and Dykhouse has settled with the Morgan County defendants. Thus, the only Defendants remaining are Trooper Mugge and Captain Storm, who have now moved for summary judgment.

## II. Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

### III. Analysis

Dykhouse's second amended complaint names the two remaining Defendants in five counts (I–IV, V) and alleges violation of his fourth, fifth, sixth, and fourteenth amendment rights as well as pendent claims for false arrest, false imprisonment, and malicious prosecution. Because of the numerous allegations in the complaint we will deal with each Defendant separately.

### A. *Trooper Mugge*

Count I of the second amended complaint basically alleges that Trooper Mugge arrested Dykhouse without probable cause to believe that he had committed any crime. This action allegedly violated Dykhouse's fourth, fifth, and fourteenth amendment rights.

The fifth amendment provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. Const. amend. V. Clearly the allegations contained in Count I do not implicate any of the rights guaranteed by the fifth amendment.

Count I also alleges that the actions of Trooper Mugge violated Dykhouse's rights under the fourth amendment which provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This provision applies to the States as well as the federal government. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Dykhouse argues that no probable cause existed to believe that he was the individual who had run Ms. Barkley off of the road. Probable cause is an amorphous concept which has recently been described as:

Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed. Probable cause is to be determined in a "practical, nontechnical," manner. The inquiry into the existence of probable cause raises questions of "probabilities ... the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.

*Hughes v. Meyer,* 880 F.2d 967, 969 (7th Cir.1989) (citations omitted). "In determining whether a police officer had probable cause to arrest, the court must view the situation in light of the totality of the circumstances." *Simkunas v. Tardi,* 720 F.Supp. 687, 692 (N.D.Ill.1989). When there is no dispute concerning the facts surrounding the arrest, detention and prosecution, the issue of probable cause is to be determined by the court. *Banish v. Locks,* 414 F.2d 638, 641 (7th Cir.1969).

■ If the police arrest a person on the basis of a private citizen's complaint which, if true, would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded. *McKinney*

v. *George*, 726 F.2d 1183, 1187 (7th Cir. 1984); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432 (7th Cir.1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). In other words, if the police have probable cause then the arrest is lawful, and they have probable cause if they believe, with reason, that the citizen is telling the truth. *McKinney*, 726 F.2d at 1187.

■ Ms. Barkley was an eyewitness. The facts she related to Trooper Mugge (if she told the truth) establish a crime. Ms. Barkley said that she was run off the road near Medora by a semi-tractor truck with the words "Thorn Apple Valley" and the number "511" on the trailer. Dykhouse was driving a truck matching this description. In addition, the ISPERN message described the truck as headed toward Jacksonville and the stop was made shortly after the incident. Furthermore, Dykhouse admitted that he had driven through the area where the incident occurred.

Dykhouse's argument against summary judgment on the issue of probable cause is premised on the fact that the numbers "511" were transposed in the ISPERN message and that Ms. Barkley could provide no other identifying information regarding the truck or the driver. In support of this argument, he cites *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In *Prouse* the Supreme Court held that the fourth amendment prohibited a traffic stop for the purpose of determining whether the driver had a valid license when the police officer had no reasonable suspicion whatsoever that the driver had committed any offense.

In the instant case, the traffic stop was made on the basis of a citizen's complaint which, if true, established that Dykhouse had committed a traffic offense and that provided some identifying information regarding the truck. Thus, the Court's decision in *Prouse* is completely inapplicable to the instant case.

■ If the police who issue a radio bulletin have probable cause for an arrest, then other police, in reasonable reliance on the bulletin, can validly make the arrest even though they are unaware of the specific facts that underlie the bulletin and establish probable cause. *United States v. Hensley*, 469 U.S. 221, 230–31, 105 S.Ct. 675, 681–82, 83 L.Ed.2d 604 (1985). In applying *Hensley* to the facts of this case, two inquiries must be made: (1) whether an objective reading of the ISPERN message supported the action taken by Morgan County deputies; and (2) whether the State Police had probable cause to believe that the driver of the truck described by Ms. Barkley had committed a crime. *United States v. Longmire*, 761 F.2d 411, 416 (7th Cir.1985).

Turning to the first question, we must conclude that an objective reading of the ISPERN message supported the action of the Morgan County deputies. The message stated that the truck sought by the State Police had the words "Thorn Apple Valley" and the number "115" on the trailer. Dykhouse's argument is premised on the proposition that the transposing of the numbers invalidates the stop. We do not agree.

Dykhouse's truck did have the words "Thorn Apple Valley" on the trailer and the digits contained in the bulletin. In addition, it was stopped shortly after the incident in the area and proceeding in the direction described in the bulletin. Therefore, we find that an objective reading of the bulletin supports the action of the Morgan County deputies.

Turning to the second question, and viewing the totality of the circumstances surrounding the stop and detention of Dykhouse, we must conclude that the State Police had probable cause to believe he committed a crime. *McKinney*, 726 F.2d at 1187. One further issue merits some discussion at this point.

Reckless driving is a misdemeanor under Illinois law. The common law rule prohibited the custodial arrest of an individual who committed a misdemeanor unless the crime occurred in the presence of the police. The Supreme Court has not addressed whether the common law rule is part of the fourth amendment. *Gustafson*

*v. Florida,* 414 U.S. 260, 266–67, 94 S.Ct. 488, 492–93, 38 L.Ed.2d 456 (1973) (Stewart, J., concurring).

Illinois does not follow this common law rule and allows custodial arrests for any crime on probable cause. Ill.Rev.Stat. ch. 38, ¶ 107–2(1)(c). In light of this statute and the explication of the doctrine of qualified immunity in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), we must conclude that any claim Dykhouse may be raising that the "custodial arrest" violated his Constitutional rights, even if there was probable cause, must fail. *See Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 441–42 (7th Cir.1986).

Our conclusion that the police had probable cause to stop and detain Dykhouse disposes of Count I of the second amended complaint wherein Dykhouse seeks $100,-000 compensatory damages and Count III of the complaint where he seeks $500,000 punitive damages against Trooper Mugge.

## B. *Captain Storm*

Dykhouse has also named Captain Storm as a Defendant. Captain Storm is the commander of District 18 and Trooper Mugge's commanding officer. Dykhouse alleges that Captain Storm failed to properly train Trooper Mugge regarding what constitutes probable cause for an arrest, allowed the prosecution of Dykhouse to continue when he was aware that no probable cause existed, violated the compulsory process clause of the sixth amendment by withholding a policy manual subpoenaed by Dykhouse, and maintained policies of allowing Troopers under his command to arrest individuals without probable cause and of contravening defendants' compulsory process rights.

Under some circumstances a plaintiff can recover damages pursuant to § 1983 when a *municipality* fails to properly train its police officers. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (municipality may be held liable under § 1983 for failure to properly train its police only where failure to train amounts to "deliberate indifference" to rights of persons with whom police come

into contact); *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1298 (7th Cir.1989). In this case Dykhouse alleges that Trooper Mugge's superior—Captain Storm—failed to properly train him and is thus liable under § 1983. Dykhouse has not attempted to impose liability on the State of Illinois for failing to train Trooper Mugge because the eleventh amendment forbids the recovery of money damages from a state under § 1983. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Dykhouse attempts to avoid this by naming Captain Storm individually; however, artful pleading cannot avoid constitutional prohibitions.

■ A suit against a state defendant in his "official capacity" is barred by the eleventh amendment. "If the theory is that the defendant occupied a given office, and the occupant of that office had a duty (one attaching to any occupant of the office) to do such-and-such, then we have an 'official capacity' suit." *Walker v. Rowe,* 791 F.2d 507, 508 (7th Cir.), *cert. denied,* 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986). That is clearly what we have here. It is unimaginable how Captain Storm could have had a duty to train Trooper Mugge outside of his "official capacity" as Trooper Mugge's commanding officer.

■ Even if Dykhouse is attempting to allege that Captain Storm's individual actions violated his fourth amendment right against being arrested without probable cause, his claim must fail. Captain Storm was not personally involved in the stop and detention of Dykhouse and the constitution does not impose vicarious liability on supervisors for the acts and omissions of their subordinates. *Walker,* 791 F.2d at 508; *Ustrak v. Fairman,* 781 F.2d 573, 575 (7th Cir.), *cert. denied,* 479 U.S. 824, 107 S.Ct. 95, 93 L.Ed.2d 47 (1986).

The remaining claim against Captain Storm is that he violated Dykhouse's rights under the compulsory process clause of the sixth amendment by failing to provide him with a copy of a State Police Operations Manual subpoenaed by Dykhouse in his defense of the reckless driving charge. In

addition, Dykhouse alleges that Captain Storm maintained a policy of contravening the compulsory process rights of criminal defendants.

The Supreme Court addressed a similar claim in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In *Ritchie* the defendant was convicted of various sexual offenses against his daughter. Prior to trial the defendant's attorney served a subpoena on the state agency responsible for investigating allegations of child abuse, seeking to obtain a copy of his daughter's file. The agency refused to comply with the subpoena pursuant to a state statute providing that such files were confidential and privileged. The defendant was convicted and appealed to the Supreme Court, arguing that the agency's refusal to provide the subpoenaed information violated his sixth amendment rights to compulsory process and confrontation.

In addressing the compulsory process claim, the Court recognized that it has had little occasion to construe the contours of the compulsory process clause but, at a minimum, it guarantees a criminal defendant's right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt. *Id.* at 55–56, 107 S.Ct. at 1000–1001. The Court has traditionally evaluated such claims under the broader protection of the due process clause of the fourteenth amendment. *Id.;* *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Turning to the due process analysis, the Court stated that the government has an obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Id.* 480 U.S. at 57, 107 S.Ct. at 1001 (citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383.

■ In the case at bar, the charge against Dykhouse was dismissed and thus it is axiomatic that the failure of Captain Storm to provide the subpoenaed manual did not prejudice his rights. Under the test enunciated in *Bagley* the manual was not "material" and thus Captain Storm's failure to comply with the subpoena was not a violation of Dykhouse's rights under the compulsory process clause of the sixth amendment or the due process clause of the fourteenth amendment.

■ Dykhouse also alleges in his complaint that Captain Storm's failure to turn over the subpoenaed manual interfered with his sixth amendment right of confrontation because it prejudiced his ability to cross-examine Trooper Mugge regarding the propriety of allowing a citizen to sign a traffic citation.

In *Ritchie* the Supreme Court held that the confrontation clause is a *trial* right and not a constitutionally-compelled rule of pretrial discovery. The right of confrontation guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Ritchie*, 480 U.S. at 51–54, 107 S.Ct. at 998–1000 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (*per curiam*)). Therefore, the failure of Captain Storm to turn over the subpoenaed manual did not violate Dykhouse's sixth amendment right to confrontation. In addition, we note that Dykhouse was prosecuted on an information, not on the traffic citation signed by Ms. Barkley. Thus, the question of the propriety of citizens signing such traffic citations was actually irrelevant.

The foregoing discussion disposes of Count II of Dykhouse's second amended complaint wherein he seeks $100,000 in compensatory damages and Count IV where he seeks $500,000 in punitive damages against Captain Storm.

## C. *Malicious Prosecution*

■ Count VII of Dykhouse's second amended complaint raises a state law claim for malicious prosecution against Captain Storm, Trooper Mugge, and the Morgan County Defendants who Dykhouse has already settled with. Generally when a federal court disposes of all of the federal issues prior to trial any remaining pendent state law claims should be dismissed without prejudice. *Bieneman v. City of Chicago,* 864 F.2d 463, 470 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989). However, in this case Dykhouse pleads the "residence" (not citizenship)[1] of the parties and cites the federal diversity statute, 28 U.S.C. § 1332. Therefore, we have an independent jurisdictional basis and may properly resolve the state law claim on the merits. *Bieneman,* 864 F.2d at 470.

■ To establish a claim for malicious prosecution under Illinois law, a plaintiff must plead and prove: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Joiner v. Benton Community Bank,* 82 Ill.2d 40, 45, 44 Ill. Dec. 260, 263, 411 N.E.2d 229, 232 (1980). In this case our prior holding that probable cause existed for the arrest and detention of Dykhouse defeats his malicious prosecution claim as well as any claim for false arrest or false imprisonment. However, Dykhouse also fails on one of the other necessary elements to establish malicious prosecution.

"It is clear that settled law bars a malicious prosecution action predicated upon criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Id.* We have thoroughly reviewed the transcript of the state court criminal trial submitted in support of the motion for summary judgment. The

transcript reveals that Judge Schwartz dismissed the charge against Dykhouse because of the failure of the state to proceed by a properly verified information.

In his complaint Dykhouse states "[t]hat said jury trial resulted in a court directed verdict for defendant (plaintiff Dykhouse herein)." Plaintiff's present counsel, Attorney Kelly Long, represented Dykhouse in the state court prosecution and is thus well aware that this statement is not true. Mr. Long did move for a directed verdict in the state court case; however, Judge Schwartz stated that such a motion was premature because the state had not rested its case at the time the motion for a directed verdict was made. In addition, the docket sheet from the state court proceeding indicates that Dykhouse's motion for a directed verdict was denied.

This docket sheet was submitted by the Defendants at the time they filed motions to dismiss under Fed.R.Civ.P. 12(b)(6). In our order ruling on those motions we stated that we could not consider evidence outside the pleadings in ruling on a motion to dismiss but would consider such evidence at the proper time. In response to one of the motions to dismiss, Mr. Long states:

> A directed verdict is a termination on the merits in plaintiff's favor and a directed verdict is alleged in paragraph 15. of Count VIII [of the first amended complaint].
>
> This is an issue of fact to be determined by the trier of fact in that all allegations of fact in the Complaint are taken as true on a Motion to Dismiss.

The reason a court can accept all allegations of fact in a complaint as true in ruling on a motion to dismiss is because Rule 11 provides that:

> The signature of an attorney or party [on a pleading or motion] constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded

---

**1.** This is a fairly common mistake—even courts sometimes confuse the two. *See Rosenburg v. Lincoln Am. Life Ins. Co.,* 883 F.2d 1328, 1330 (7th Cir.1989); *Jones v. Psimos,* 882 F.2d 1277, 1278 n. 1 (7th Cir.1989).

in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

.     .     .     .     .

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction....

Fed.R.Civ.P. 11. Rule 11 has both a subjective and an objective component. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 931 (7th Cir.1989) *(en banc)*. The subjective element prohibits a pleading or motion interposed for any improper purpose, no matter how well supported by the facts and law. *Id.* at 931–32. The objective element is that a pleading or motion filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel failed to make a reasonable inquiry beforehand. *Id.* at 932. "Rule 11 creates duties to one's adversary and to the legal system,.... The duty to one's adversary is to avoid needless legal costs and delay. The duty to the legal system ... is to avoid clogging the courts with paper that wastes judicial time and thus defers the disposition of other cases or, by leaving judges less time to resolve each case, increases the rate of error." *Id.*

Mr. Long represented Dykhouse in the state prosecution and thus it required absolutely no investigation or inquiry on his part to discover that Dykhouse did not receive a directed verdict from Judge Schwartz.

The question of probable cause to stop Dykhouse was arguable and thus no violation occurred by Mr. Long in pursuing that claim. Similarly, the allegations that Captain Storm violated Dykhouse's sixth amendment rights were marginally meritorious. On the other hand, the statement that Dykhouse received a directed verdict and that the state officials were guilty of malicious prosecution was blatantly false.

Considerations of due process are applicable to sanctions imposed pursuant to Rule 11. This does not necessarily mean that an evidentiary hearing is necessary prior to imposing a sanction; however, notice and an opportunity to be heard are required. *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 205–06 (7th Cir.1985). Therefore, Mr. Long will be ordered to show cause in writing by April 16, 1990, why we should not sanction him for stating in the complaint, and maintaining in response to a motion to dismiss, that Dykhouse received a directed verdict in the state court prosecution.

*Ergo*, Defendants' motion for summary judgment (d/e 56) is ALLOWED. Plaintiff's attorney, Kelly Long, is ORDERED TO SHOW CAUSE in writing by April 16, 1990, why he should not be sanctioned for falsely alleging that Plaintiff received a directed verdict in the state prosecution.

Case CLOSED.

### SUPPLEMENTAL OPINION

Attorney Kelly Long has responded to our order to show cause why he should not be sanctioned for falsely alleging that his client received a directed verdict in the state prosecution from which this case arose. In our prior order, we entered summary judgment in favor of the two Illinois State Police Officers on both the federal claims and the pendent state law claim for malicious prosecution.

In his complaint and in response to a motion to dismiss, Plaintiff stated that he had received a directed verdict in the state court prosecution. The transcript of the trial reveals that the following colloquy took place outside the jury's presence:

The Court: Record may show Defendant's Motion for Directed Verdict. I don't believe that they [the State] have rested, Mr. Long.

Mr. Long: I don't believe with the testimony they've got, your Honor, trying to save the Court's time.

The Court: I appreciate that, sir, but this motion will be heard when the State rests.

Mr. Long: Okay.

The Court: Now, if you have any other motions, I will consider them at this time.

Mr. Long then moved to dismiss on the ground that the State had failed to comply with discovery, and to quash the arrest for lack of probable cause. The Court stated that the State should have supplied the requested discovery but, rather than dismiss the case, the Court would grant a mistrial so that the Defendant could obtain a copy of the State Police Operations Manual which he sought. Mr. Long turned down this option because he did not want to put his client through the expense of a second trial. The Court then stated that it would reserve ruling on Defendant's motion to quash the arrest pending the introduction of further evidence.

At this point, Mr. Long indicated that he had "one further short motion" and he then moved to strike the information because Mrs. Barkley, the complaining witness, admitted upon cross-examination that she had not sworn to the allegedly verified information. After hearing argument on this motion, the Court then stated "Motion to Strike is allowed. Cause Dismissed." It was upon this basis that we ordered Attorney Long to show cause why sanctions should not be imposed pursuant to Fed.R. Civ.P. 11 for falsely alleging that he had received a directed verdict in the state prosecution.

In response to our order, Attorney Long has submitted the notice of appeal filed by the State and the order of the Illinois Appellate Court, Fourth District, dismissing the appeal for lack of an appealable order. The notice of appeal filed by the State characterized the judgment as a "directed verdict on the grounds that the criminal information was not properly verified." The appellate court's order to show cause stated that "[t]he State appeals from an order dismissing an information upon motion for directed verdict at the close of the State's case." Mr. Long asserts that he relied upon this characterization by the State and the Illinois Appellate Court when he alleged in this Court that he received a directed verdict.

The Illinois Criminal Code provides that: When, at the close of the State's evidence or at the close of all of the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant.

Ill.Rev.Stat. ch. 38, ¶ 115–4(k). The Illinois Supreme Court has stated that unlike a typical trial motion which requires the Court to be informed of the reasons supporting it, a motion for a directed verdict asserts only that "as a matter of law the evidence is insufficient to support a finding or verdict of guilty." *People v. Withers*, 87 Ill.2d 224, 239, 57 Ill.Dec. 736, 739, 429 N.E.2d 853, 856 (1981). A motion for a directed verdict "requires the trial court to consider only whether a reasonable mind could fairly conclude the guilt of the accused beyond a reasonable doubt, considering the evidence most strongly in the People's favor." *Id.*

In the state court prosecution currently at issue, the Court could not have granted a directed verdict because the State had not finished presenting all of its evidence. In fact, the Court expressly stated this on the record when Mr. Long moved for a directed verdict.

We are cognizant of the fact that the State characterized the disposition of the criminal charge as a directed verdict in its notice of appeal and that the appellate court, apparently in reliance on the State's notice of appeal, stated in its order to show cause that Mr. Dykhouse received a directed verdict. While the mischaracterization of a ruling by another attorney or a court is not necessarily an excuse, we believe that it does support Mr. Long's position that he did not intend to deceive us by characterizing the ruling as a directed verdict. Without the requisite element of intent, we would not be justified in sanctioning Mr. Long. Therefore, we will dismiss

the order to show cause and strike the statement in our previous order that Mr. Long "falsely alleged" that he received a directed verdict in the state court prosecution because the phrase "falsely alleged" connotes an intentional act.

*Ergo,* the ORDER TO SHOW CAUSE entered against Attorney Kelly Long is DISMISSED. Furthermore, the statement in our previous opinion that Attorney Long "falsely alleg[ed] that Plaintiff received a directed verdict in the state prosecution" is STRICKEN.