(No. 52665.—

BILL JOINER, Appellant, v. BENTON COMMUNITY BANK, Appellee.

*Opinion filed September 29, 1980.*

Elmer Jenkins, of Benton, for appellant.

John E. Jacobsen, of Campbell, Furnall, Moore & Jacobsen, of Mt. Vernon, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The circuit court of Franklin County entered summary judgment for the Benton Community Bank, defendant in a malicious prosecution action brought against it by Bill Joiner, plaintiff. A divided appellate court reversed and remanded the cause for trial (76 Ill. App. 3d 871), and we allowed defendant's petition for leave to appeal.

In 1976, when the occurrences from which this litigation arose took place, plaintiff had been a used car dealer in Benton for some 16 years. During most of that period defendant had furnished "floor plan" financing for the used car business up to a maximum of $35,000. Under that arrangement plaintiff purchased used cars in Illinois and surrounding States and kept them on his lot until

they were sold. Bills of sale, promissory notes and trust receipts for those cars were executed by plaintiff to defendant, the terms of which limited plaintiff to cash sales of the financed cars. The document terms also required plaintiff to report to defendant the sale of any car so financed on the day of sale, keep the proceeds of the sale segregated from plaintiff's personal funds and pay those proceeds to defendant on the sale date.

During October 1975 a routine check of the used car lot by defendant disclosed that some 12 of the financed cars were missing. Those cars had been sold by plaintiff without payment of the proceeds to defendant, and indictments were subsequently returned against plaintiff in February 1976, charging him with theft in that he "knowingly obtained by deception control over" defendant's property, permanently depriving defendant thereof in violation of sections 16—1(a) and (b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 16—1(a), (b)), and with disposing of collateral security without paying the party secured by the security agreement in violation of section 9—306.01 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 9—306.01). Those indictments were dismissed on July 21, 1976, by the Franklin County circuit court, the docket entry reading:

> "On motion of the special prosecutor William Meehan, previously appointed by the Court, and at the request of the complaining witness and in view of the fact that full restitution has been made to the complaining witness and because of the state of ill health of the defendant Robert Ewing and for other good cause shown the above case is dismissed upon motion of the special prosecutor."

On January 7, 1977, plaintiff filed his complaint for malicious prosecution. In a subsequent deposition taken by defendant, plaintiff testified that, following discovery by defendant that plaintiff had sold 12 cars without remitting the proceeds, defendant replevied and sold the remaining cars, applying the proceeds to plaintiff's indebtedness

and leaving a balance of about $24,000 plus interest owed by plaintiff to defendant. Plaintiff further testified that following his indictment he had many conversations with defendant's employees.

"A. I can't tell you all the conversations, you know, that I had with them. I mean, they had me arrested and I went in and talked to them, and still seeing if I couldn't make some kind of arrangements to pay this debt that I owed. And I talked to Mr. Davis and Mr. Wagner and Mr. Newcomb at various times.

Q. Were these had after you were indicted or before you were indicted?

A. That was after I was arrested and after I was indicted.

\*\*\*

Q. As to those conversations, can you tell me the substance of any of them?

A. Well, they had me indicted for theft and they had me indicted for fraud, and what I wanted to do was to pay the bank what I owed them, but I wanted these indictments, well, I wanted these charges dropped against me. That's the essence of the whole thing, I guess.

Q. Do you recall what any of the bankers said when you explained this to them?

A. Yes. They stipulated that a few times. They didn't know what they could do. They also stipulated that they were interested in their money, only in getting their money.

Q. Who said that?

A. Mr. David and Mr. Wagner, all they were interested in was getting their money.

Q. Then what happened next?

A. Well, I was brought before, I was told to appear in court and my partner and I, Bob Ewing, we appeared in court. We talked to the prosecuting attorney.

Q. Who was that?

A. Bill Meehan, and we discussed it very thoroughly. We never did go before the judge. We were never arraigned, and if I would pay my money there was an agreement that charges could be dismissed.

\*\*\*

Q. What kind of response did you make to what Meehan told you?

A. I told him I would pay what I owed them if they would drop these charges."

Thereafter, plaintiff testified, he and his wife borrowed from another Benton bank, where his wife was employed, sufficient funds to pay defendant, and the special prosecutor dismissed the criminal charges.

The summary judgment for defendant entered by the trial court is a salutary means of disposing of litigation in which there is no genuine factual dispute. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586; *Allen v. Meyer* (1958), 14 Ill. 2d 284, 292.) Section 57 of our Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57(3)) authorizes summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our inquiry focuses, then, upon whether the pleadings in this case, together with plaintiff's deposition, pose a genuine issue of material fact for, if they do, the trial court erred in its summary disposition. We believe, however, that they do not, and that the summary judgment entered by the trial judge was proper.

This court and others have indicated that suits for malicious prosecution are not favored in law. (*Schwartz v. Schwartz* (1937), 366 Ill. 247, 250; *Shedd v. Patterson* (1922), 302 Ill. 355, 359-60; *Ada Oil Co. v. Dillaberry* (Tex. Civ. App. 1969), 440 S.W.2d 902, 914.) Public policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy. Persons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting them by the fear of unfounded suits by those accused. It was for the purpose of encouraging and protecting those who exercise their constitutional right to appeal to our

courts for redress of private or public grievances that the circumstances in which malicious prosecution actions may be brought have been rather narrowly circumscribed.

Plaintiff, in order to state a cause of action for malicious prosecution, must allege facts showing "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." (*Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 475.) If the absence of one or more of these essential elements has been established to the point that it may fairly be said that no genuine issue of fact as to its absence exists, summary judgment was appropriate. It seems apparent from plaintiff's deposition that this may well be true of several elements, but defendant, the trial judge and the appellate court have concentrated their attention upon whether the criminal proceedings were terminated pursuant to an agreement or compromise procured by plaintiff or to which plaintiff consented. It is clear that the settled law bars a malicious prosecution action predicated upon criminal proceedings which were terminated in a manner not indicative of the innocence of the accused (Restatement (Second) of Torts sec. 660(a) (1977); 52 Am. Jur. 2d *Malicious Prosecution* sec. 43 (1970); Annot., 67 A.L.R. 513 (1930); *Schwartz v. Schwartz* (1937), 366 Ill. 247, 252; *Ewe v. Angland* (1945), 325 Ill. App. 677, 60 N.E.2d 774.) Thus, one who procures or agrees to a disposition of the charges against him in a manner which leaves the question of his innocence unresolved may not bring a malicious prosecution action based upon such charges. (See, *e.g.*, above citations and *Zebrowski v. Bobinski* (1938), 278 N.Y. 332, 16 N.E.2d 355; *Leonard v. George* (4th Cir. 1949), 178 F.2d 312, *cert. denied* (1950), 339 U.S. 965, 94 L. Ed. 1374, 70 S. Ct. 1000;

*Baird v. Aluminum Seal Co.* (3d Cir. 1957), 250 F.2d 595, 601-02; *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc.* (E.D. Tenn. 1972), 358 F. Supp. 17, 20, *aff'd* (1973), 477 F.2d 598; *Gowin v. Heider* (1963) 237 Or. 266, 386 P.2d 1; *Cline v. Flagler Sales Corp.* (Fla. App. 1968), 207 So. 2d 709, 710; *Lloyd v. Almeda State Bank* (Tex. Civ. App. 1961), 346 S.W.2d 947; *Kabnick v. O'Malley* (1977), 58 App. Div. 2d 804, 805, 396 N.Y.S.2d 253, 255.) Many of the cases state the reason for the rule to be that plaintiff admits the existence of probable cause when he enters into or procures a compromise or an agreement for dismissal of the charges against him; others state that plaintiff is thereafter "estopped" to deny that probable cause existed.

Plaintiff testified that he wanted to pay the bank what he owed but "I wanted these charges dropped against me. That's the essence of the whole thing, I guess"; that "Bill Meehan [the special prosecutor] and we [plaintiff and his partner] discussed it very thoroughly [and] *** if I would pay my money [to the bank] there was an agreement that charges could be dismissed." There is, in our judgment, only one sensible inference to be drawn from plaintiff's testimony—he entered into an agreement to pay the bank after which the prosecutor would dismiss the charges. Plaintiff made the payment, the charges were dismissed, and he is now precluded from seeking damages for malicious prosecution. The identity of the other parties to the agreement—a matter of great concern to defendant and the appellate court majority—is not consequential. Whether the agreement involved the bank, the prosecutor, plaintiff's partner and plaintiff, or only the prosecutor and plaintiff, is of no moment. The crucial question is: Was there a compromise or agreement procured or consented to by plaintiff? He testified that "the essence" of his efforts was to pay what he owed the bank and have "these charges dropped"; and that, after

he talked to the prosecutor, "there was an agreement" to dismiss them. Clearly, we believe, an untortured interpretation of plaintiff's testimony can be only that plaintiff procured or agreed to the dismissal of the charges.

The judgment of the appellate court is reversed, and the judgment of the circuit court of Franklin County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*