**Naomi TREECE, Plaintiff,**

v.

**VILLAGE OF NAPERVILLE,
a municipal corporation,
et al., Defendants.**

No. 94 C 5548.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 12, 1995.

John P. De Rose, Kenneth A. Jatczak, John P. De Rose & Associates, Burr Ridge, IL, for plaintiff.

Michael M. Roth, Howard P. Levine, Paul L. Stephanides, Naperville, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Naomi Treece brought this cause of action against defendants Steven Hochstetler, Larry Dickson, Michael Sullivan, and the City of Naperville ("City"). The individual defendants are police officers for the City. Plaintiff seeks damages for malicious prosecution under 42 U.S.C. § 1983 (count I), malicious prosecution under state law (count II), and intentional infliction of emotional distress (count III). Defendants have moved to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6). For the reasons stated below, defendants' motion is granted in part and denied in part.

#### Background

In 1991, plaintiff Naomi Treece was indicted and charged with three counts of intimidation. After learning of the indictment, she turned herself in. Treece's case went to trial twice. The first trial resulted in a hung jury.

**1254**

(Def.Mem. at 5, Ex. B.) The second jury returned a guilty verdict which was eventually overturned on account of prosecutorial misconduct. (*Id.* at 5; Ex. B, C.) On January 11, 1994, the judge dismissed the charges pursuant to a motion to nolle prosequi. (First Am.Compl. ¶ 92.) The claims in this case arise out of the conduct of the officers leading up to the indictment.

Plaintiff's troubles with the defendants began on September 25, 1991, when Officer Hochstetler appeared at her home. Hochstetler told Naomi and her husband Otis[1] that he had seen a truck with a sheet over it in the driveway and had wondered "what [was] going on." (*Id.* ¶ 11.) Proceeding without a warrant, Hochstetler searched the house and garage. (*Id.* ¶¶ 12–14.) The Treeces repeatedly told him to leave, but he refused and continued to search the premises for nearly an hour. (*Id.* ¶¶ 15–17.)

Hochstetler located some scrap aluminum and copper wire in Otis's truck and then, using the Treece's phone, summoned two other officers to the residence. (*Id.* ¶¶ 24, 27.) When the additional officers arrived, Hochstetler told them to remain in the driveway. (*Id.* ¶ 25.)

In the meantime, Hochstetler repeatedly demanded that the Treeces sign a "Permission to Search" form. (*Id.* ¶¶ 18–23, 26.) Hochstetler told the Treeces that, if they did not sign the form, Otis would lose his job at the Naperville Electric Company on account of wire theft. (*Id.* ¶ 26.) When Naomi refused to sign the form, Hochstetler pushed her to the floor. (*Id.* ¶ 20.) Hochstetler never obtained their written consent. (*Id.* ¶¶ 19–21, 23.)[2] The following day, Naomi made a random stop at a log ranch home to inquire about the design and see if the owner was interested in selling. (*Id.* ¶¶ 30, 32.) The log ranch was owned by defendant Dickson, another City police officer. (*Id.* ¶ 31.) When Dickson introduced himself as an officer, plaintiff returned to her car and drove away. (*Id.* ¶ 33.) For reasons that are not apparent, Dickson ran a license plate check

on Naomi's vehicle and called defendant Hochstetler. (*Id.* ¶ 34.) During the conversation, Dickson "falsely relayed" to Hochstetler that Naomi had been looking for him. (*Id.* ¶ 35.)

Later, Hochstetler called Naomi and requested that they meet to discuss Otis's theft charge. (*Id.* ¶ 36.) They agreed to meet at 9:00 am the following day at the Naperville train station. (*Id.* ¶¶ 37–39.) Sometime before the end of that day, September 26, 1991, Hochstetler made out a police report stating that Naomi intimidated him on September 27, 1991. (*Id.* ¶ 40.)

On September 27, 1991, the two met as scheduled. (*Id.* ¶ 41.) During the meeting, Hochstetler said to plaintiff, "You've got problems. I've got problems. $100,000 will make it all go away." (*Id.* ¶ 42.) Specifically, Hochstetler told Naomi that, for $100,000, he could help Otis get his job back. (*Id.* ¶ 43.) Plaintiff responded that she did not have that kind of money. (*Id.* ¶ 44.) After "repeated cajoling and insistence by defendant Hochstetler," Naomi finally agreed to pay. (*Id.* ¶ 46.).

Two days later, Hochstetler telephoned plaintiff to set up another meeting. (*Id.* ¶¶ 50–52.) The two convened again at the Naperville train station on October 1, 1991. (*Id.* ¶¶ 52–53.) At the meeting without Naomi's knowledge, Hochstetler wore a body wire that was recording the conversation and transmitting it to defendant Sullivan. (*Id.* ¶¶ 54–55.) During the conversation, they discussed the money and Otis's case. (*Id.* ¶¶ 57–59.) Naomi insists that she "repeatedly tried to leave the train station, but was continually enticed to remain in conversation by defendant Officer Hochstetler in an attempt to get her to incriminate herself." (*Id.* ¶ 59.) Eventually, though, Naomi went home. (*Id.* ¶ 60.)

That same day, at the police department's request, Otis turned himself in. (*Id.* ¶¶ 61–62.) After posting a bond, they returned home. (*Id.* ¶ 63.) Within a week, Naomi and her friends started planning a fundraiser to

---

1. To avoid confusion, the court will refer to Naomi and Otis Treece by their first names.

2. Eventually, Otis was charged with theft of the wire, and was suspended without pay for thirty days from his job at the Naperville Electric Department. (*Id.* ¶¶ 28–29.)

collect the $100,000 bribe for Hochstetler. (*Id.* ¶ 64.) The plans included an event at a local VFW hall. (*Id.* ¶ 65.)

Based on these encounters with Naomi, Hochstetler obtained permission to place an overhear on the Treece's home telephone. (*Id.* ¶¶ 66–67.) Hochstetler then placed a call to Naomi, and asked her if she had any more news about his bribe money. (*Id.* ¶ 68.) Plaintiff does not indicate what her answer was.

On October 11, 1991, Naomi went to the police department to film some scrap wire located on the lot. (*Id.* ¶ 69.) When Hochstetler saw plaintiff in the parking lot, he began yelling obscenities at her and ordered her out of the car. (*Id.* ¶¶ 70–71.) He made her spread her feet and place her hands on the hood of the car. (*Id.* ¶ 71.) Hochstetler then filed a police report stating that Naomi had been videotaping the license plates of the officer's personal cars. (*Id.* ¶¶ 73–75.)

Plaintiff denies that she was tape recording license plates and denies that she ever did anything to intimidate the officers. (*Id.* ¶¶ 35, 47–48, 56, 74.) She insists that Hochstetler repeatedly filed false police reports concerning her and others. (*Id.* ¶ 75.) In addition, she claims that—even before the incidents involving her—the City knew that Hochstetler had authored false police reports. (*Id.* ¶ 76.)

On November 8, 1991, Naomi was summoned to appear before a DuPage County grand jury. (*Id.* ¶ 79.) "[B]ased on the knowingly false allegations of Officer Hochstetler," Naomi was indicted and charged with three counts of intimidation. (*Id.* ¶ 80.) As a result, plaintiff turned herself in and the trials began. (*Id.* ¶ 81.) On January 11, 1994, pursuant to a motion to dismiss nolle prosequi, the charges against plaintiff were discharged. (*Id.* ¶ 12.) Plaintiff then filed this suit.

### Motion to Dismiss

■■■ In deciding a motion to dismiss, the court accepts all well-pleaded factual allegations as true, as well as all reasonable inferences that may be drawn from those allegations. *Mid America Title Co. v. Kirk,* 991

F.2d 417, 419 (7th Cir.1993). Because federal courts simply require "notice pleading," this court must construe pleadings liberally. *Leatherman v. Tarrant County,* 507 U.S. 163, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). In construing reasonable inferences, however, the court need not stretch allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago,* 777 F.Supp. 1437, 1440 (N.D.Ill.1991).

### Analysis

Plaintiff's complaint contains claims for malicious prosecution under the Fourteenth Amendment (via 42 U.S.C. § 1983) and state common law. In addition, she advances a claim for intentional infliction of emotional distress. Defendants insist that plaintiff cannot recover under any of these theories. The court addresses each claim in turn.

### I. COUNT I: SECTION 1983 MALICIOUS PROSECUTION

■■■ Defendants seek dismissal of the Section 1983 malicious prosecution claim on the grounds that it cannot be predicated on the Fourteenth Amendment. Defendants' argument is based on a recent decision by the Supreme Court in *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The facts in *Albright* are very similar. The plaintiff in *Albright* surrendered to the authorities upon learning that a warrant had been issued for his arrest. Albright was indicted for selling look-alike drugs and released on bail with ordinary restrictions on his right to travel. Eventually, the charges against him were dismissed for failure to state a claim under state law. *Id.,* at ——, 114 S.Ct. at 810. Albright sued the arresting officer under Section 1983 and the Fourteenth Amendment, arguing that he had been deprived of his "liberty interest to be free from criminal prosecution except upon probable cause." *Id.,* at ——, 114 S.Ct. at 810–11. Specifically, the plaintiff asserted that defendants had maliciously prosecuted him in violation of the substantive due process clause of the Fourteenth Amendment. *Id.,* at ——, 114 S.Ct. at 812.

The district court concluded that Albright failed to state a claim under Section 1983. The Seventh Circuit affirmed the dismissal,

holding "that prosecution without probable cause is a constitutional tort ... only if accompanied by incarceration or loss of employment or some other 'palpable consequence.' " *Id.*, at ——, 114 S.Ct. at 811. In a fractured opinion, the Supreme Court affirmed dismissal. The plurality determined that "substantive due process may not furnish the constitutional peg on which to hang such a 'tort.' " *Id.*, at ——, 114 S.Ct. at 811 n. 4. Rather, malicious prosecution claims under Section 1983 should be judged under the Fourth Amendment[3] since it specifically addresses "the deprivations of liberty that go hand in hand with criminal prosecutions." *Id.*, at ——, 114 S.Ct. at 813.

Because the plaintiff in *Albright* had not challenged the defendant's conduct on Fourth Amendment grounds, the Court expressed no view as to whether that Amendment did, in fact, provide protection from malicious prosecution. Nor did the Court provide any guidance on what the contours of a malicious prosecution claim might be. *Id.*, —— U.S. at —— – ——, 114 S.Ct. at 813–14. In *Smart v. Board of Trustees*, 34 F.3d 432 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995), the Seventh Circuit read *Albright* as specifically allowing malicious prosecution claims so long as they are brought under the Fourth Amendment:

> If malicious prosecution or abuse of process is committed by state actors and results in the arrest or other seizure of the defendant, there is an infringement of liberty, but we now know that the defendant's only constitutional remedy is under the Fourth Amendment (as made applicable to the states by the Fourteenth), and not under the due process clause directly.

*Id.* at 434. In light of *Albright* and *Smart,* plaintiff cannot prevail on her substantive due process claim, although she may have a claim under the Fourth Amendment.

## A. Timeliness

■ The Fourth Amendment analysis of malicious prosecution claims raises an interesting statute of limitations problem. In her concurrence in *Albright,* Justice Ginsburg speculated that the plaintiff had sued under the Fourteenth Amendment believing that any Fourth Amendment claim was time-barred (Fourth Amendment claims ordinarily accrue at the time of the initial seizure). Justice Ginsburg hypothesized that the claims might not, in fact, have been time-barred because the plaintiff was still "seized" within the meaning of the Fourth Amendment during the time that he was made to stand trial.

Other district courts in this circuit have dismissed Justice Ginsburg's suggestion, and concluded that Fourth Amendment malicious prosecution claims accrue when the individual is arrested. *DiBenedetto v. City of Chicago,* 873 F.Supp. 106, 108 (N.D.Ill.1994) (Norgle, J.); *Reed v. City of Chicago,* 867 F.Supp. 714, 719 (N.D.Ill.1994) (Nordberg, J.); *Bass v. Sampson,* No. 93 C 4442, 1995 WL 22711, at *2, 1995 U.S.Dist. LEXIS 424, at *5–7 (N.D.Ill. Jan. 12, 1995) (Gettleman, J.); *Collins v. O'Donnell,* No. 94 C 2862, 1994 WL 659319, at *1, 1994 U.S.Dist. LEXIS 16616, at *3–4 (N.D.Ill. Nov. 16, 1994) (Alesia, J.). This position is based largely on the Seventh Circuit's decision in *Wilkins v. May,* 872 F.2d 190, 194 (7th Cir.1989), *cert. denied,* 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990), rejecting the concept of a "continuing seizure."[4] The problem with this view is that it fails to take into account the plaintiff's

**3.** The full text of the Fourth Amendment of the United States Constitution states as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

**4.** After *Albright,* the Seventh Circuit reiterated its view that a seizure for Fourth Amendment purposes ends at the time of the Gerstein hearing, and does not carry forward. *Garcia v. City of Chicago,* 24 F.3d 966, 970 n. 6 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1313, 131 L.Ed.2d 194 (1995); *see also Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir.1993) (Section 1983 claims accrue when plaintiff knows or should know that constitutional rights have been violated) (citing *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992)).

objection to the prosecution, itself.[5] Moreover, this analysis leads to an anomalous result because these claims will invariably be time-barred before a plaintiff can demonstrate the "maliciousness" of the proceedings.

In this court's view, the problem raised by these Fourth Amendment malicious prosecution claims is not one of a "continuing seizure" but of when the claim accrues. To explain, it is necessary to review the elements. To state a claim for malicious prosecution as a constitutional tort under Section 1983 a plaintiff must now demonstrate that (1) the requirements of a state law cause of action for malicious prosecution have been met; (2) the malicious prosecution was committed by state actors; and (3) the plaintiff was deprived of liberty within the meaning of the Fourth Amendment. *See Smart*, 34 F.3d at 434; *Lorenzana v. Mette*, No. 94 C 6861, 1995 WL 461860, at *3, 1995 U.S.Dist. LEXIS 10837, at *9 (N.D.Ill. Aug. 2, 1995). To state a claim for malicious prosecution under Illinois law, it must be alleged that: (1) plaintiff was subjected to judicial proceedings; (2) for which there was no probable cause; (3) defendants instituted the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury. *Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir.1995) (citing *Heck v. Humphrey*, —— U.S. ——, ——, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994)); *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 44 Ill.Dec. 260, 263, 411 N.E.2d 229, 232 (1980).

"It is axiomatic that a claim for malicious prosecution must include an allegation that the judicial proceeding was terminated in plaintiff's favor." *Cooper v. Butler*, No. 92 C 5604, 1995 WL 399009, at *1–2, 1995 U.S.Dist. LEXIS 9334, at *2–3 (N.D.Ill. June 27, 1995) (Andersen, J.) (reconsidering

prior ruling that Section 1983 malicious prosecution claim accrued on date of seizure). Because a cause of action cannot accrue until all the elements of a plaintiff's claim come into existence, claims such as these do not accrue until the proceeding has been terminated in plaintiff's favor. *Cooper*, 1995 WL 399009, at *1–3, 1995 U.S.Dist. LEXIS 9334, at *2–4; *Albright*, 975 F.2d at 344–45 (recognizing malicious prosecution cause of action accrues at dismissal of prosecution); *cf. Heck*, —— U.S. at ——, 114 S.Ct. at 2374 (explaining that Section 1983 cause of action challenging the legality of a conviction does not accrue until the conviction is reversed); *Seaton v. Kato*, No. 94 C 5691, 1995 WL 88956, at *3–5, 1995 U.S.Dist. LEXIS 2380, at *8–13 (N.D.Ill. Feb. 28, 1995) (Plunkett, J.) (concluding that Section 1983 claims for malicious prosecution, false imprisonment, and excessive force all accrued when the conviction was reversed). In this light, the problem is not whether these claims can avoid being time-barred under the rubric of continuing seizure—but when these claims accrue in the first instance. Ordinarily, a claim for malicious prosecution will accrue when the underlying action is terminated in the plaintiff's favor because that is the last act necessary to satisfy all of the elements of a cause of action.

Turning to the facts of this case, the charges against plaintiff were dropped on January 11, 1994. Plaintiff's original complaint was filed on September 12, 1994. Since Section 1983 claims arising in Illinois are subject to Illinois' two-year statute of limitations for personal injury claims, the complaint is timely. *See Kelly*, 4 F.3d at 511; *Wilson*, 956 F.2d at 740–41 (two year statute of limitations period in Section 1983 claims).

---

**5.** This analysis essentially treats these actions as traditional Fourth Amendment claims for "arrest without probable cause" in which plaintiff need only show (1) that he was arrested and (2) that there was no probable cause for the arrest. *Bass*, 1995 WL 22711, at *2, 1995 U.S.Dist. LEXIS 424, at *4–5 (Gettleman, J.); *Brindisi v. Village of Fox Lake*, 93 C 1013, 1994 WL 270285, at *2–3, 1994 U.S.Dist. LEXIS 8101, at *7–8 (N.D.Ill. June 15, 1994) (Holderman, J.); *see Ferguson v. Smith*, No. 94 C 7446, 1995 WL

221844, *2, 1995 U.S.Dist. LEXIS 4763, *3–6 (N.D.Ill. April 11, 1995) (Gettleman, J.) (dismissing Fourth Amendment malicious prosecution claim as "duplicative" of Fourth Amendment false arrest and detention claim); *Cruz v. Stasinopoulos*, 843 F.Supp. 435, 437 (N.D.Ill.1994) (Zagel, J.) (stating that malicious prosecution not allowed under *Albright* where plaintiff also asserted claims for false arrest and excessive force which were "identical wrongs").

**1258**

## B. Termination of Underlying Case

 Defendants insists the complaint still fails to state a claim because plaintiff cannot demonstrate that her criminal charges were terminated in her favor. Mere termination is not sufficient to satisfy the second element. *Dobiecki v. Palacios,* 829 F.Supp. 229, 235 (N.D.Ill.1993). Where the underlying proceeding is criminal in nature, the "favorable termination" element requires that the termination be in a manner indicative of the innocence of the accused. *Joiner,* 411 N.E.2d at 232.

 As plaintiff notes in her brief, a nolle prosequi termination is generally considered a termination in favor of the plaintiff for the purposes of a malicious prosecution claim. *Burghardt v. Remiyac,* 207 Ill.App.3d 402, 152 Ill.Dec. 367, 370, 565 N.E.2d 1049, 1052 (1991); *Conterras v. Village of Woodridge,* No. 93 C 7727, 1994 WL 163994, at *2 (N.D.Ill. April 29, 1994) (citing *Hess v. Missouri P.R. Co.,* 657 F.Supp. 1066, 1068 (S.D.Ill.1987)). However, if a nolle prosequi dismissal is the product of a compromise or technical failure, it does not indicate innocence. *Burghardt,* 565 N.E.2d at 1052; *Hess,* 657 F.Supp. at 1068; *see Conterras,* 1994 WL 163994, at *3–4 (plea was result of compromise where criminal defendant pleaded to a lesser offense and prosecutor stated that "case did not appear the same strength it appeared originally"); *Dobiecki,* 829 F.Supp. at 235–36 (suppression of evidence on " 'technical' grounds having no or little relation to the evidence's trustworthiness" do not indicate innocence). When the nature of the dismissal is nolle prosequi, the court must look to underlying facts to determine whether the dismissal truly indicates innocence. *DiBenedetto,* 873 F.Supp. at 107, n. 2; *Burghardt,* 565 N.E.2d at 1052. Neither party submitted state court transcripts or documents that would guide the court in making this determination. As such, it would be improper to grant dismissal on this ground.

## C. Commencement of Proceedings by Defendants

 Nevertheless, the Section 1983 allegations are deficient in one respect. Plaintiff has chosen to sue the officers for malicious prosecution without articulating how they caused her to be prosecuted. The complaint contains no explanation of how the officers were involved in the "commencement and continuance" of the proceedings. Naomi alleges that the statements of these officers led to (1) the overhear on her home telephone and (2) her indictment. (First Am. Compl ¶¶ 66, 80; *see also id.* ¶¶ 34, 54.) Plaintiff's explanation of how the officers "caused" her prosecution, however, is insufficient. Naomi simply states:

> That upon the charges of intimidation, the defendants Officer Hochstetler, Officer Dickson, Officer Sullivan, and the Village of Naperville caused plaintiff Treece to be brought before the court to be tried concerning the allegations.

(*Id.* ¶ 83.) The problem with this allegation is that police officers, like everyone else, are immune from prosecution for their testimony before the grand jury. *Briscoe v. LaHue,* 460 U.S. 325, 334–46, 103 S.Ct. 1108, 1115–21, 75 L.Ed.2d 96 (1983); *Curtis,* 48 F.3d at 284. Consequently, plaintiff's claims cannot be grounded solely on the allegation that the officers gave false testimony to the grand jury. Therefore, plaintiff's Section 1983 claim is dismissed without prejudice.[6] Nevertheless, because plaintiff may be able to cure this defect, the court addresses the other issues raised by defendants' motion to dismiss.

## D. Municipal Liability

 The City asks the court to dismiss it from the Section 1983 malicious prosecution claim. Municipalities cannot be held liable for violations of Section 1983 solely on a respondeat superior theory. *Monell v. Department of Social Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

---

6. Plaintiff is given 20 days from the date of the entry of this Memorandum Opinion and Order to amend her complaint to allege how these defendants caused her "malicious prosecution," if she can. If no amended complaint is filed at that time, the court will assume plaintiff cannot state a claim and will dismiss this case in its entirety pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

They can, however, be sued directly under Section 1983 where the alleged unconstitutional action implements or executes an official policy statement, ordinance, regulation, or decision. *Id.* at 694, 98 S.Ct. at 2037. As a corollary, a claim against a municipality will be allowed where plaintiff's injury resulted from a municipal custom, policy or practice. *Id.; Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985).

■ Although defendants protest that the allegations contain only one incident of misconduct, the court does not agree. The complaint recounts several acts—including solicitation of a bribe, the filing of several false charges, and false testimony before a grand jury. In addition, plaintiff alleges that Hochstetler has a reputation for this type of misconduct. (First Am.Compl. ¶ 76.) These allegations are sufficient at this point, since the court assumes plaintiff can prove these facts at trial. In addition, Naomi claims that the City failed to properly instruct, supervise, control and discipline the officers regarding the "correct procedure for the investigating and reporting of the circumstances of an alleged crime." (*Id.* ¶ 78.) These allegations are sufficient to satisfy the liberal notice pleading requirements set forth in Fed.R.Civ.P. 8(a)(2).

■ The court notes that both sides relied on cases pre-dating the Supreme Court's decision in *Leatherman v. Tarrant County,* 507 U.S. 163, 113 S.Ct. 1160. Before *Leatherman,* plaintiffs asserting Monell-type claims needed to plead specific facts supporting their policy and custom allegations. *See e.g. Strauss,* 760 F.2d at 767. As defendants point out, plaintiff may have had trouble meeting such strict standards. However, this type of heightened pleading requirement came under criticism and was eventually rejected by the Supreme Court in *Leatherman v. Tarrant County.* Under the *Leatherman* standards, all that is required is a "a short and plain statement of a claim showing that the pleader is entitled to relief." *Id.; see* Fed.R.Civ.P. 8(a)(2). Plaintiff has met this low standard. Therefore, defendants' motion to dismiss the City from the Section 1983 claim in Count I is denied.

## II. COUNT II: STATE LAW MALICIOUS PROSECUTION

■ Next, defendants argue that plaintiff's state law claim for malicious prosecution is time-barred. The court does not agree. The clock did not start running on this claim until the state criminal proceedings were terminated. Since plaintiff sued within one year of the dismissal, her claims are not barred under the one year limitations period set forth in the Illinois Local Government Tort Immunity Act, 745 ILCS 10/8–101. Nevertheless, plaintiff's state law malicious prosecution claim is insufficient for the same reason as the federal claim—there is no suggestion that any of these defendants actually caused Naomi's prosecution. Therefore, the court dismisses count II without prejudice under the same condition that plaintiff amend her complaint in 20 days.

## III. COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Defendants have two problems with plaintiff's claim for intentional infliction of emotional distress. The first is whether it is timely. As with malicious prosecution claims, the clock did not start running on plaintiff's intentional infliction of emotional distress claim until the state criminal proceedings were terminated. Since plaintiff sued within one year of the dismissal, her claim is not barred under the one year limitations period set forth in the Illinois Local Government Tort Immunity Act, 745 ILCS 10/8–101.

■ Defendants' second objection is that the allegations are legally insufficient. To withstand a motion to dismiss, a plaintiff must allege that: (1) defendants' conduct was extreme and outrageous; (2) defendants intended to inflict severe emotional distress or knew there was a high probability that the conduct would cause such distress; (3) defendants' conduct did, in fact, cause severe emotional distress. *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 282, 641 N.E.2d 498, 506 (1994). Defendants protest that the conduct of the officers is not sufficiently "outrageous."

In an effort to define the type of conduct that would be considered "outrageous," the Illinois Supreme Court recently explained:

> Conduct is of an extreme and outrageous character where "recitation of the facts to an average member of the community would arouse in him resentment against the actor, and lead him to exclaim, 'Outrageous!'"

*Id.,* 641 N.E.2d at 507 (citing Restatement (Second) of Torts 46, Comment d, at 73 (1965)). In applying this "standard," the court considers whether defendants abused positions of power. *Id.* In this case, Naomi alleges that defendants tried to elicit a bribe from her. Then, having no success, they fabricated testimony about her in order to tap her phones and then get an indictment. The court believes these allegations are sufficiently outrageous to satisfy the requirement that the conduct be "outrageous." As such, defendants' motion to dismiss count III is denied.

## IV. PUNITIVE DAMAGES AGAINST THE CITY

 Finally, the City correctly argues that it is not liable for punitive damages on any of these claims. In a Section 1983 policy and custom claim, a governmental body cannot be held liable for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981); *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1299 (7th Cir.1989). As for the state law claims, punitive damages against the City are prohibited under Section 2–102 of the Illinois Tort Immunity Act, 745 ILCS 10/2–102. Therefore, plaintiff may not seek punitive damages from the City.

### *Conclusion*

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. The malicious prosecution claims in Counts I (Section 1983) and II (state law) are dismissed without prejudice and plaintiff is given leave to file a second amended complaint within 20 days of the entry of this Memorandum Opinion and Order. Defendants motion to dismiss the intentional infliction of emotional distress claim in count III

is denied. If no complaint is filed by November 3, 1995, the court will dismiss this case pursuant to *United Mine Workers v. Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Parties should discuss settlement before the next court date.