2026 IL App (1st) 242256-U

SECOND DIVISION
January 27, 2026

No. 1-24-2256

**NOTICE**:   This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE**
**APPELLATE COURT OF ILLINOIS**
**FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| ROBERT HILL, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Cook County |
| | ) |
| v. | ) No. 21 L 7886 |
| | ) |
| COOK COUNTY, THE SHERIFF OF COOK COUNTY, THE | ) |
| VILLAGE OF ROBBINS, Robbins Police Officers KIMBLE, | ) |
| FRANKLIN, and HENDERSON, and Cook County Sheriffs | ) |
| SHADER, GLEASON, GRAY, D'ORONZO, NOWACZYK, | ) |
| and MCGUIRE, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| (Village of Robbins, and Robbins Police Officers Kimble, | ) |
| Franklin, and Henderson, | ) Honorable |
| | ) Michael Otto, |
| Defendants-Appellees.) | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justice McBride and Justice Ellis concurred with the judgment.

**ORDER**

¶ 1     *Held*: We affirm the trial court's grant of summary judgment in favor of defendants on plaintiff's malicious prosecution claim where the charges against plaintiff were dismissed in a manner not indicative of his innocence.

¶ 2    Plaintiff Robert Hill filed a complaint alleging malicious prosecution against defendants Cook County, the Sheriff of Cook County, the Village of Robbins, Robbins Police Officers Kimble, Franklin, and Henderson, and Cook County Sheriffs Shader, Gleason, Gray, D'Oronzo, Nowaczyk, and McGuire. Defendants filed motions for summary judgment, which the court granted in part and denied in part. The Cook County defendants subsequently settled with plaintiff.

¶ 3    On appeal, plaintiff contends that summary judgment in favor of the Robbins defendants was inappropriate where there is a question of material fact regarding whether the criminal charges against him were dismissed in a manner indicative of his innocence. For the following reasons, we affirm.

¶ 4                            I. BACKGROUND

¶ 5    The relevant background of the proceedings prior to plaintiff's bench trial are taken from our unpublished order in a previous appeal, *People v. Hill*, 2016 IL App (1st) 131973-U.

¶ 6    On November 25, 2005, during an armed robbery at Frank's Liquor Store (Frank's), Ghada Elayyan was killed and her father, Fakhir Elayyan, was wounded. *Id.* ¶ 5. Plaintiff was arrested in connection with the incident on October 29, 2007. On December 26, 2007, a grand jury indicted him on multiple counts of first degree murder, attempted first degree murder, armed robbery and aggravated battery. *Id.* ¶¶ 5-6.

¶ 7    On May 29, 2009, plaintiff filed a motion to dismiss the indictment against him. Plaintiff alleged that when he was arrested on October 29, 2007, the police offered that if he took and passed a polygraph test, he would not be rearrested or charged regarding the incident at Frank's. He alleged that he made an agreement with the police in good faith and in doing so, he relinquished his constitutional right against self-incrimination. Plaintiff attached a copy of the polygraph

examiner's report to his motion. The report stated that the results indicated plaintiff was telling the truth. *Id.* ¶¶ 6-7.

¶ 8    The trial court held an evidentiary hearing where plaintiff was the only witness who testified. The following is a summary of his testimony as stated in our prior order:

> "The [plaintiff] was first arrested in connection with the charges in this case two days after the November 25, 2005, robbery. He was held in custody for three days and then released. [He] understood he was released because a codefendant confessed to the robbery and told the police [plaintiff] was not involved. On October 29, 2007, [plaintiff] was arrested by sheriff's police. He was taken to the sheriff's department in Maywood where he was questioned by Officer Frank. When asked if he knew why he was arrested, [plaintiff] told Officer Frank that a man named "Keyonte" told him that Keyonte was given probation in exchange for his testimony against certain individuals alleged to be involved in the robbery at Frank's. [Plaintiff] believed that he was one of those individuals. [Plaintiff] denied knowing anything about the robbery at Frank's. Officer Frank asked [plaintiff] if he would take a polygraph test to prove that he was telling the truth. If [plaintiff] agreed to take the test and passed, he could never be arrested or questioned about the robbery at Frank's again. Prior to taking the test, [plaintiff] signed a form. The agreement was set forth at the bottom of the form." *Id.* ¶ 9.

¶ 9    After taking the test and being informed by Officer Frank that he had passed, plaintiff was released. A month later, he was arrested again and charged in the case. *Id.* ¶ 10. Plaintiff testified that he never spoke with an Assistant State's Attorney about the agreement, and he acknowledged that the form he signed did not indicate any involvement by the State's Attorney. *Id.* ¶ 11.

¶ 10    The trial court denied plaintiff's motion to dismiss the indictment. The court noted that the State could be held to such agreements where it was actively involved in making the agreement. In this case, however, the evidence showed that the prosecutor was not actively involved in making the agreement with plaintiff. *Id.* ¶ 12.

¶ 11    The case proceeded to a bench trial where plaintiff and several witnesses testified. In rendering its judgment, the trial court acknowledged that the evidence showed that Carnell Tyler was the shooter, that he was accompanied by Darion Nance, and plaintiff was not present during the actual shooting at Frank's. The court found, however, that Nance's testimony, as well as the testimony of witnesses Terry Holloway and Carlos Tyler, showed that plaintiff "was part and parcel of a scheme with Carnell Tyler and Darion Nance to go and commit an armed robbery in that convenience store." The court further acknowledged that Nance received a deal from the State in exchange for his testimony, and that Holloway and Carlos Tyler had testified "under the form of immunity." As such, the court viewed their testimony with a degree of caution.

¶ 12    According to the testimony, Carnell Tyler held a grudge against Ghada and expressed to Carlos, his uncle, a desire to kill her and rob the store. Carnell also relayed this intent to Holloway. Plaintiff was contacted, and he agreed to "do a lick or an armed robbery upon the convenience store" for a portion of the proceeds. Plaintiff asked Nance, who was involved with selling narcotics, if he wanted "to do a lick *** and if he was carrying *** a throw away gun ***." Nance was carrying a weapon and agreed to participate in the armed robbery.

¶ 13    Using his vehicle, plaintiff drove Carnell and Nance to Frank's and then parked away from that location. Plaintiff never entered the store. After the shooting, plaintiff drove Carnell and Nance to Holloway's residence. Carnell had taken a cash box from the cash register but could not open

it. Carlos eventually opened the box with a screwdriver. Carnell, Nance, and plaintiff split the proceeds. They gave Holloway and Carlos $25 each for their participation.

¶ 14     The trial court found that, although it viewed their testimony with appropriate caution, the testimony of Nance, Holloway, and Carlos "corroborate each other and *** form the fact the [plaintiff] was part and parcel of the planning and the perpetration of the armed robbery ***, though perhaps he may not have intended any deadly results ***." Based on principles of accountability and felony murder, the trial court found plaintiff guilty on all counts. He was sentenced to consecutive sentences of 40 years in prison for murder, 30 years for attempted murder, and concurrent sentences of 25 years on each of the two armed robbery convictions.

¶ 15     Plaintiff appealed, arguing that the trial court erred when it had denied his motion to dismiss the indictment against him based on his agreement with the police. While his appeal was pending, our supreme court filed *People v. Stapinski*, 2015 IL 118278.

¶ 16     In that prior appeal, this court considered whether the mere lack of involvement by the State rendered the agreement made between plaintiff and the police invalid. *Hill*, 2016 IL App (1st) 131973-U, ¶ 16. We noted that in *Stapinski*, the supreme court rejected the State's argument that prosecutors could not be bound by agreements made by law enforcement officers. *Id.* ¶ 22. The court reasoned that it did not matter whether the State's Attorney approved the agreement. Rather, "[a]n unauthorized promise may be enforced on due process grounds if a defendant's reliance on the promise has constitutional consequences." *Id.* ¶ 55.

¶ 17     In light of *Stapinski*, we found the trial court's decision to deny plaintiff's motion to dismiss, solely on the grounds that the State was not involved with the agreement, was an error of law. *Hill*, 2016 IL App (1st) 131973-U, ¶ 27. We vacated plaintiff's convictions and remanded the cause to the trial court to complete the hearing on his motion to dismiss the indictment. We further

ordered that if the court finds plaintiff "has established an enforceable cooperation agreement not to arrest or prosecute him on the charges set forth in the indictment and that the agreement was breached by the State, the court shall dismiss the indictment." *Id.* ¶ 29.

¶ 18 A hearing was held on September 26, 2017. The trial court found that an enforceable cooperation agreement was formed between plaintiff and the police. Therefore, "[a]s a matter of fair conduct, the government ought to be required to honor such agreement." The court found that plaintiff's "substantive due process rights were violated when the State breached the agreement that [plaintiff] had entered into with the *** police." The trial court dismissed the indictment against plaintiff. This judgment was not appealed.

¶ 19 Plaintiff filed a petition for a certificate of innocence, which was denied. The trial court's order indicated that it had denied the petition because plaintiff was "not innocent of the offenses charged in the indictment," and he caused or brought about his conviction by his own conduct.

¶ 20 Plaintiff also filed a complaint in federal court against defendants for wrongful charges and false imprisonment. He later dismissed the complaint and on August 4, 2021, he filed the present action in state court. The complaint alleged malicious prosecution, intentional infliction of emotional distress and conspiracy against all defendants, negligent and willful failure to train and supervise against the Village of Robbins and Cook County, breach of contract against the Cook County defendants, and *respondeat superior* and indemnification against the governmental entities.

¶ 21 Defendants filed motions for summary judgment. On September 11, 2024, the court granted summary judgment in favor of defendants on plaintiff's malicious prosecution claim, finding that "the proceedings against him were not terminated because the polygraph showed he was innocent." Instead, "the sole basis for the termination of the proceedings against [plaintiff]

was the finding of an enforceable cooperation agreement, the conditions of which [plaintiff] performed." Since plaintiff's claims of intentional infliction of emotional distress, conspiracy, negligent and willful failure to train and supervise, and *respondeat superior* relied on the success of his malicious prosecution claim, the trial court also granted summary judgment as to those counts. However, it denied summary judgment on plaintiff's breach of contract claim against the Cook County defendants. Plaintiff subsequently settled with the Cook County defendants.

¶ 22    On November 4, 2024, the trial court entered an order dismissing the case against the Cook County defendants pursuant to the settlement. It also found no just cause for delaying enforcement or appeal of the order granting summary judgment in favor of the Robbins defendants. Plaintiff now appeals that order.

¶ 23                                    II. ANALYSIS

¶ 24    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2022). When considering whether summary judgment is appropriate, we construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmoving party. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. The trial court's order granting summary judgment is reviewed *de novo. Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998). We may affirm a grant of summary judgment on any basis supported by the record. *Martinez v. Cook County State's Attorney's Office*, 2018 IL App (1st) 163153, ¶ 21.

¶ 25    Actions for malicious prosecution are not favored in law. *Joiner v. Benton Community Bank*, 82 Ill. 2d 40, 44 (1980). To sustain an action for malicious prosecution, plaintiff must allege facts showing: (1) the commencement or continuance of an original criminal or civil judicial

proceeding by defendants; (2) termination of the proceeding in plaintiff's favor; (3) the absence of probable cause; (4) the presence of malice; and (5) plaintiff suffered damages as a result. *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 74. The absence of even one element precludes plaintiff from pursuing his claim. *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996).

¶ 26    It is well-established that to satisfy the second element, plaintiff must allege facts showing that the underlying criminal proceeding was terminated in a manner indicative of his innocence. *Joiner*, 82 Ill. 2d at 45. Here, the trial court found that an enforceable cooperation agreement was formed between plaintiff and the police, and plaintiff's substantive due process rights were violated when the State breached that agreement by rearresting him. The trial court therefore dismissed the indictment against plaintiff. The issue here is whether the dismissal of plaintiff's indictment was indicative of his innocence so as to support his malicious prosecution claim.

¶ 27    In *Stapinski*, our supreme court considered the use of cooperation agreements in criminal cases. The court construed cooperation agreements "under contract principles." *Stapinski*, 2015 IL 118278, ¶ 47. The court noted that cooperation agreements are formed when "the State agrees to limit a prosecution in some manner in consideration for the defendant's cooperation." *Id.* ¶ 46. Persons who enter such agreements with the government often "do so because they are in serious legal difficulties and are seeking to avoid or ameliorate their problems by furnishing information in pending investigations." *Id.* ¶ 45. The parties agree that the defendant's cooperation is sufficient consideration for the promise of immunity. *Id.* ¶ 46.

¶ 28    Our supreme court determined that fundamental fairness under the due process clause required the government to honor such an agreement. *Id.* ¶ 48. When the State breached the agreement, the defendant's substantive due process rights were violated even though the prosecutor did not formally approve the agreement. *Id.* ¶ 55. The injury suffered by the defendant

was "a prejudicial violation of his due process rights." *Id.* The court found that dismissal of charges against the defendant was an appropriate remedy. *Id.* ¶ 56.

¶ 29    Similarly, the trial court in this case found that a cooperation agreement had been formed between plaintiff and the police, and the agreement was breached when the police rearrested plaintiff after he had taken and passed the polygraph test. To remedy the violation of plaintiff's due process rights, the trial court dismissed the indictment against him. Whether plaintiff told the truth during the examination was irrelevant to the trial court's determination. Instead, following *Stapinski*, the trial court focused solely on the State's breach of the cooperation agreement. As such, the dismissal was based on principles of contract law and due process rather than on any probability that plaintiff committed the offense. Since the dismissal was not indicative of plaintiff's innocence, it cannot sustain a malicious prosecution action.

¶ 30    Plaintiff urges this court to look beyond the agreement and consider the surrounding circumstances. He contends that the evidence established that he had always maintained his innocence and that the polygraph results "unambiguously showed" his innocence. At the very least, he argues, a genuine issue of material fact exists regarding whether the dismissal was in a manner indicative of his innocence. Plaintiff cites *Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill. 2d 267 (1997), *Beaman*, *Rich v. Baldwin*, 133 Ill. App. 3d 712 (1985), *Velez v. Avis Rent A Car System, Inc.*, 308 Ill. App. 3d 923 (1999), and *Padilla v. City of Chicago*, 932 F. Supp. 2d 907 (N.D. Ill. 2013), as support.

¶ 31    These cases, however, are distinguishable because they did not involve a cooperation agreement. Instead, the action terminated because the prosecutor decided not to continue criminal proceedings against the defendant. As a result, the court had to examine the circumstances surrounding the abandonment of the case to determine whether it was indicative of the defendant's

innocence. *Cult Awareness Network*, 177 Ill. 2d at 276-77. The circumstances "must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Beaman*, 2021 IL 125617, ¶ 109. Even if the State had nolle prossed the charges in this case, the abandonment of proceedings is *not* indicative of the innocence if "the *nolle prosequi* is the result of an agreement or compromise with the accused ***." *Swick*, 169 Ill. 2d at 513.

¶ 32    Although plaintiff argues that we should look beyond the fact that his charges were dismissed based on the agreement, the existence of that agreement is dispositive here.

¶ 33    Plaintiff also contends that a question of material fact exists because the polygraph results "unambiguously showed" his innocence. Defendants respond that this evidence is inadmissible and thus cannot support plaintiff's claim.

¶ 34    We note that polygraph results are not sufficiently reliable to establish guilt or innocence, and that evidence regarding polygraph exams is generally inadmissible at trial. *People v. Baynes*, 88 Ill. 2d 225, 240 (1981). However, inadmissible evidence such as polygraph results may be presented for a limited purpose. *People v. Jefferson*, 184 Ill. 2d 486, 496 (1998). We cannot say that such evidence is categorically irrelevant when considering whether a dismissal was indicative of innocence in a malicious prosecution action.

¶ 35    In this case, while plaintiff did take a polygraph test, an agreement existed between plaintiff and defendants regarding that examination and whether plaintiff would be charged. Our focus, therefore, is not on the results of the polygraph test. Rather, the "crucial question is: Was there a compromise or agreement procured or consented to by plaintiff?" *Joiner*, 82 Ill. 2d at 46. If so, he cannot seek damages for malicious prosecution. *Id.*

¶ 36    For the reasons set forth, plaintiff cannot satisfy the second element of his malicious prosecution claim. Where plaintiff fails to establish an element of his claim, summary judgment is

appropriate. *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001).

¶ 37    As plaintiff acknowledges, the remaining allegations in his complaint are based on a finding that a malicious prosecution had been committed against him. Since we find that summary judgment was proper as to his malicious prosecution claim, summary judgment was proper on the remaining claims as well.

¶ 38                                    III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 40    Affirmed.